UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JIMMIE CHAPMAN,

      Plaintiff,

vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 1:10-cv-155

Spiegel, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Jimmie Chapman filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On April 24, 2007, Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB) alleging a disability onset date of October 19, 2006, due to shoulder injury, a bad neck, problems with his elbows and right hand, and hearing loss. (Doc. 7-5 at 7-19, Doc. 7-5 at 22). He was 48 years old at the time of his alleged disability. (Doc. 7-5 at 22). On January 23, 2008, after Plaintiff's claims were denied initially and upon reconsideration, (Doc. 7-3 at 2-5, Doc. 7-4 at 2-

16), he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). (Doc. 7-4 at 17-19, 25-39). On February 25, 2009, an evidentiary hearing was held by video conference, at which Plaintiff was represented by counsel. (Doc. 7-2 at 34-63). At the hearing, ALJ, Geraldine H. Page ("ALJ Page"), heard testimony from Plaintiff and Robert Jackson, an impartial vocational expert. (*Id.*).

On March 30, 2009, ALJ Page entered her decision denying Plaintiff's SSI and DIB applications. (Doc. 7-2 at 14-27). The Appeals Council denied his request for review. (Doc. 7-2 at 2-5). Therefore, ALJ Page's decision stands as the Defendant's final determination.

ALJ Page's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since October 19, 2006, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*

3. The claimant has the following severe impairments: status post left shoulder arthroscopy, mini-open rotator cuff repair and arthroscopic debridement; osteoarthritis and degenerative changes of the cervical spine; sensineural hearing loss; and obesity (20 CFR 404.1521 *et seq*. and 416.921 *et seq.*).

   ……………………

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

   ……………………

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light

      work (as defined in 20 CFR 404.1567(b) and 416.967(b)). Claimant can lift/carry no more than 20 pounds occasionally and 10 pounds frequently, stand and walk for no more than 6 hours out of an 8 hour workday, and sit no more than 6 hours out of an 8 hour workday. His pushing and pulling is limited in the upper extremities, regarding the lift and carry amount and he cannot perform elevated work with his left upper extremity.  He can also occasionally reach with his left upper extremity and occasionally crawl. However, the claimant must engage in work that does not require: working around hazardous machinery or at unprotected heights; climbing ladders, ropes or scaffolds; or working on vibrating surfaces or in extreme cold temperatures.  Finally, the claimant cannot engage in work that has excessive background noise or requires significant verbal communication in responding to supervisors, coworkers, or others.

      ……………………

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

      ……………………

7.     The claimant was born on April 28, 1958 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

      ……………………

9.     Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exists in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

      ……………………

11.    The claimant has not been under a disability, as defined in the Social Security Act, from October 19, 2006 through the date of this decision (20

CFR 404.1520(g) and 416.920(g)).

(Doc. 7-2, at 16-27). Thus, ALJ Page concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB. (*Id.*).

On appeal to this Court, Plaintiff maintains that ALJ Gitlow erred by: 1) failing to fully develop the record; 2) failing to consider the combined impact of Plaintiff's impairments; and 3) inadequately assessing Plaintiff's pain and credibility. (Doc. 9).

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York,* 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen,* 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the Court should consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence

supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. … The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency ("SSA") is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimants impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimants impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. §404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered impairment, or combination of impairments, expected to last at least twelve

5

months, that left him unable to perform any job in the national economy. 42 U.S.C. §423(d)(1)(A). In this case, Plaintiff alleges that the three identified errors at the fifth step of the sequential analysis require this Court to reverse the Commissioner's decision.

### B. The ALJ's Development of the Record

In his first assignment of error, Plaintiff maintains that ALJ Page failed to adequately develop the record and that Plaintiff was unable to obtain certain treatments due to his lack of funding, specifically, he could not afford better hearing aids and could not afford to post-surgical physical therapy for his shoulder. Plaintiff's argument is not well taken.

It is the claimant's burden to place a "complete and detailed" record before the ALJ, it is not the responsibility of the administrative law judge. *Landsaw v. Sec'y of Health & Human Servs.,*, 803 F.2d 211, 214 (6th Cir. 1986). However, the ALJ may refer a claimant to a consultative specialist if the existing medical sources do not contain sufficient evidence to make a determination. *Id.* citing 20 C.F.R. §416.917(a).

In reviewing Plaintiff's treatment records, ALJ Page noted that Plaintiff testified he first noticed hearing loss eight to nine years ago and that it had gotten worse in the last four to five years. (Doc. 7-2 at 48). Plaintiff testified that, although they allow him to hear better, he does not wear hearing aids because they are aggravating and he cannot get used to them. (*Id.* at 48-49). Plaintiff failed to provide any further medical evidence or testimony regarding his hearing loss, therefore, ALJ Page determined that the information provided was insufficient and requested a consultative evaluation. (*Id.* at 21). The evaluation was performed by J. Magnussen, M.D. ("Dr. Magnussen"), an

otolaryngologist,[1] on August 6, 2007. (Doc. 7-7 at 112-116).

Dr. Magnussen's examination indicated that Plaintiff's external ears and ear drums were normal, and that his ear canals were free of debris. (*Id.* at 112). The examination also showed that Plaintiff had a speech reception threshold of 70 decibels in the right ear and 75 decibels in the left ear. (*Id.*). On a speech audiometry test, Plaintiff registered pure tone averages of about 53 decibels in the right ear and 55 decibels in the left ear with no evidence of conductive component. (*Id.*). Plaintiff's speech discrimination was 100 percent bilaterally. (*Id.*).

However, Dr. Magnussen questioned "the accuracy of Plaintiff's testing" and noted that "there was some variability on his pure tone scores and speech reception thresholds." (*Id.* at 113). Dr. Magnussen noted that Plaintiff seemed to look at him a lot when he was talking to him and that he was able to hear his son, whom he brought with to the evaluation, talk to him even when Plaintiff was not looking at him. (*Id.* at 112). Objective evidence relied upon Dr. Magnusson reflected a diagnosis of bilateral flat sensorineural hearing loss with excellent discrimination, but he questioned whether Plaintiff's condition was as bad as the testing indicated for the reasons stated above. (*Id.* at 113). Dr. Magnussen concluded by determining that Plaintiff would probably benefit from wearing bilateral hearing aids. (*Id.*).

In regards to Plaintiff's left shoulder impairment, ALJ Page noted that Plaintiff sought treatment at the Holzer Clinic in September 2006. (Doc. 7-2 at 20). In reviewing the records, Plaintiff reported that he had been experiencing discomfort in his left shoulder on an intermittent basis for years. (Doc. 7-7 at 19). Plaintiff complained of

---

[1] An Otolaryngologist is a medical physician that deals with the diagnosis and treatment of diseases of the ear, nose, and throat. More commonly known as an "ENT." The American Heritage College Dictionary 967-968 (3d ed. 1997).

7

pain in lifting objects primarily with his left arm. (*Id.*). Plaintiff also stated that his pain was exacerbated after he fell and hit a metal doorjam while at work as a union carpenter. (*Id.* at 22).

The records also showed that Plaintiff had passive range of motion ("ROM") and had pain with abduction and flexion at 80 degrees and his grip strength was decreased. (*Id.* at 19). An x-ray showed mild degenerative changes without fracture and an MRI revealed a tear of the supraspinatus tendon and subacromial and subdeltoid bursitis, (i.e., left rotator cuff tear). (*Id.* at 20-21). In October 2006, Plaintiff complained of having difficulty lifting his left arm into a forward flex or abduction position. (*Id.* at 22). As a result, Plaintiff was given pain medication and instructed to see an orthopedist. (*Id.* at 22-23). Plaintiff was also referred to physical therapy for a period of two to three weeks and was advised to follow-up in one year. (*Id.* at 23, 26).

On November 7, 2007, Stanley Tao, M.D. ("Dr. Tao"), an orthopedic surgeon, examined Plaintiff's left shoulder. (*Id.* at 145). Dr. Tao determined that Plaintiff had ruptured his left rotator cuff. (*Id.* at 145). As a result of the examination and Plaintiff's complaints of chronic pain, Dr. Tao performed arthroscopy, mini-open rotator cuff repair, and arthroscopic debridement of the left shoulder on January 3, 2007. (*Id.* at 56). Prior to Plaintiff's surgery, Dr. Tao stated that Plaintiff would be totally disabled from work for 4 to 6 months from the date of the injury, (i.e., November 2006 through May 2007). (*Id.* at 72). On January 23, 2007, three weeks after Plaintiff's surgery, he returned to Dr. Tao claiming an increase in shoulder pain. (*Id.* at 49). However, Dr. Tao noted that upon general examination Plaintiff had normal gait and coordination. (*Id.*). The examination of Plaintiff's left shoulder revealed that all stability tests were negative, that

8

he had slight pain over the portals, but that his upper extremity exam was unremarkable in that he had no motor or sensory deficits. (*Id.*). Dr. Tao removed Plaintiff's sutures and reported that his left shoulder "looked good." (*Id.* at 50).

On February 27, 2007, Plaintiff returned to Dr. Tao complaining of shoulder pain and told him that he had quit physical therapy. (*Id.* at 46). Dr. Tao observed that Plaintiff's left shoulder had swelled slightly, but examination showed: forward flexion of 167, external rotation of 50, minor limitation in his active ROM, and unremarkable upper extremity. (*Id.*). As a result, Dr. Tao noted that Plaintiff needed to continue physical therapy, but that his overall condition was stable. (*Id.* at 47). On April 24, 2007, Plaintiff again complained of increased pain. (*Id.* at 153). However, Dr. Tao observed that Plaintiff had normal gait and coordination and that examination of his left shoulder showed: no swelling, forward flexion of 167; external rotation of 50; minor limitation in his ROM; gentle function intact; and unremarkable upper extremity. (*Id.*). Therefore, Plaintiff was again advised to continue physical therapy and his condition was noted as "stable." (*Id.* at 154). On June 26, 2007, during a follow-up examination, Dr. Tao noted that the examination of Plaintiff's left shoulder was normal, Plaintiff's condition continued to improve, and as such, he recommended that Plaintiff should only return as needed. (*Id.* at 155).

Contrary to Plaintiff's argument, ALJ Page completed an exhaustive review and the objective evidence does not suggest the need for additional evidence to be found other than that requested and considered by the ALJ. I conclude ALJ Page properly developed the record and substantial evidence supports her decision.

9

### C. The Combined Impact of Impairments

Plaintiff argues that ALJ Page failed to adequately consider the combination of Plaintiff's impairments when deciding this case. Specifically, Plaintiff alleges that ALJ Page failed to give adequate consideration to his hearing loss, recurring headaches, shoulder and leg pain. (Doc. 9 at 9-11).

While it is clear the ALJ must consider the combined effect of Plaintiff's impairment in assessing his eligibility for disability benefits, *see Barney v. Secretary of Health and Human Services,* 743 F.2d 448, 453 (6th Cir. 1984), there is substantial evidence in the record establishing ALJ Page did so in this case.

The ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments...". (Doc. 7-2 at 17-18). In addition, the ALJ went on to find that "[a]dditionally, since obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listed impairment, the cumulative effects of obesity have also been considered at each stage of the analysis." (Id). This shows that the ALJ did give the combination of impairments proper consideration even though a more detailed explanation is not provided for in the ALJ's decision. *See Loy v. Secretary of Health and Human Servs.,* 901 F.2d 1306, 1310 (6th Cir. 1990)(per curiam)(ALJ's specific reference to the claimant's "combination of impairments" satisfied duty to consider the combined impact of impairments); *Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987)(per curiam)(same). Plaintiff erroneously relies on *Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985) to support his argument as it contrary to the holding in *Loy* (supra)

and *Gooch* (supra).[2]

### D. Credibility Assessment and Evaluation of Pain

Plaintiff's third statement of error finds fault with ALJ Page's conclusion that his testimony was not entirely credible. Specifically, Plaintiff claims that ALJ Page failed to consider all of the factors listed in 20 C.F.R. §404.1529. With respect to his complaints of hearing loss, recurring headaches, shoulder and leg pain, Plaintiff alleges that ALJ Page failed to adequately consider Plaintiff's subjective complaints and medical records in determining the limitations that should be imposed. (Doc. 9 at 11-12). Plaintiff argues that the medical records reflect several diagnoses that would be expected to produce his debilitated condition. (*Id.*). The same diagnoses support his claims of difficulty in lifting his arms, his reports of constant pain in his left shoulder and intermittent pain on the right side of his body. (Doc. 7-2 at 53-54). In addition, Plaintiff contends that the records he provided, as a result of treatment sought for his headaches and recurring hearing loss, supported his complaints of difficulty maintaining auditory conversations. (Doc. 9 at 12).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and

---

[2] In fact, all the cases cited by Plaintiff were from other circuits and other district courts, none of which have precedential value to this Court.

deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001). Thus, it may proper for an ALJ to discount the claimant's testimony. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

In this matter, ALJ Page noted various factors in her decision which caused her to question Plaintiff's credibility. For instance, she noted that Plaintiff never reported to any of his treating physicians that his physical impairments were at the level of severity that he is currently alleging, but instead testified that he stopped seeking medical treatment sometime in 2007. (Doc. 7-2 at 47). His other allegations of chronic pain, resulting in the alleged functional limitations, are also not corroborated by the objective medical record. Specifically, in completing ORSC's RFC assessment Plaintiff told the independent evaluator that he wanted to obtain his contracting license to become a plumber (Doc. 7-7 at 132), which showed that Plaintiff believed he was capable of working. Moreover, Plaintiff testified that he does not have any problems with: helping to clean the house, washing dishes; vacuuming; mowing the grass with a push mower; and is able to feed, bathe, comb, and dress himself on a daily basis. (Doc. 7-2 at 52-53).

ALJ Page found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," (*Id.* at 20), and that the evidence provided established Plaintiff has the following severe impairments: status post left shoulder arthroscopy, mini-open rotator cuff repair, an arthroscopic

debridement; osteoarthritis and degenerative changes of the cervical spine; sensineural hearing loss; and obesity. (*Id.* at 16). However, in reviewing Plaintiff's multiple RFC assessments, ALJ Page also found that Plaintiff's statements concerning the severity, intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with said assessments. (*Id.* at 20). ALJ Page also noted that objective tests including: gait, coordination and stability were also normal. (Doc. 7-2 at 17, Doc. 7-7 at 44-47, 49-54, 144-147, 149-156).

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Therefore, because ALJ Page found inconsistencies between the objective medical evidence and Plaintiff's testimony about the extent of his pain and limitations, it was permissible for him to discredit Plaintiff's testimony about the severity of his symptoms. As a result, given the great deference to an ALJ's credibility assessment, I conclude that substantial evidence supports ALJ Page's decision to discredit Plaintiff's statements about the severity of his symptoms.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be closed.

*s/Stephanie K. Bowman*
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JIMMIE CHAPMAN,

      Plaintiff,

vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 1:10-cv-155

Spiegel, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).